ENTERED
JUN 20 2013
IN REGISTER BY JJE

FILED
13 JUN 20 PM 4:06
CIRCUIT COURT
FOR MULTNOMAH COUNTY

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

08821

RANDY RITMILLER, Individually and as a Shareholder of Spirit Enterprises, Inc.;

Plaintiff,

vs.

MICHAEL SPICER, Individually and as a Shareholder of Spirit Enterprises, Inc.;
AMY SPICER, Individually;
MARY LOU SPICER, Individually;
JUSTIN SPICER, Individually;
ANDREW SPICER, Individually;

Defendants.

Case No. 1306-08821

COMPLAINT

Breach of Duties of Good Faith and Fair Dealing;
Breach of Duty of Full Disclosure;
Common Law Fraud;
Conversion;
Intentional Infliction of Emotional Distress;
and Unjust Enrichment

ORS 60.952

JURY TRIAL REQUESTED

CLAIM NOT SUBJECT TO MANDATORY ARBITRATION

CLAIM AMOUNT NOT MORE THAN $2,000,000

Plaintiff alleges:

**JURISDICTION**

1.

At all relevant times, Plaintiff, RANDY RITMILLER ("Ritmiller") is a resident of the County of Multnomah in the State of Oregon.

2.

At all relevant times, Defendant, MICHAEL SPICER ("M. Spicer") is a resident of the County of Clark, in the State of Washington.

///

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086

3.

At all relevant times Defendant, AMY SPICER ("A. Spicer") is a resident of the County of Multnomah, in the State of Oregon.

4.

At all relevant times Defendant, MARY LOU SPICER ("M.L. Spicer") is a resident of the County of Multnomah, in the State of Oregon.

5.

At all relevant times Defendant, JUSTIN SPICER ("J. Spicer") is a resident of Multnomah County, in the State of Oregon.

6.

At all relevant times Defendant, ANDREW SPICER ("A. Spicer") is a resident of Multnomah County, in the State of Oregon.

7.

Additionally, Plaintiff is informed and believes and through this information and belief allege that the defendants, and each of them, were the agents, representatives, partners, joint venturers or employees of one another, and that the acts and omissions which form the basis of this Complaint were committed or omitted in the course and scope of said agency, representation, partnership, joint venture or employment; in addition to their individual liability which may also be found herein.

8.

Plaintiff reserves the right to amend such claims and damages amounts, as they become discovered in the course of this litigation.

///

///

///

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

**FIRST CAUSE OF ACTION**

(Breach of Duty of Good Faith and Fair Dealing: Michael Spicer)

9.

On or about August of 1997 Spirit Enterprises, Inc. was formed and it purchased the assets of the Oregon Business, Stan the Hot Water Heater Man. The shareholders of Spirit Enterprises who purchased those assets were Michael Spicer ("M. Spicer") and Randy Ritmiller ("Ritmiller").

10.

As a part of his administrative duties Michael Spicer was to make general accounting entries, and compile and provide documents for the preparation of the taxes for the business and the shareholders. Randy Ritmiller, the other owner and shareholder, was the responsible managing individual (licensed plumber) and the only licensed and bonded plumbing contractor for Spirit Enterprises from 1997 through May 2013. On or before January 2008 Michael Spicer entered into and perpetuated a scheme and artifice to defraud Spirit Enterprises and Randy Ritmiller through, but not limited to (a) fraudulent tax and accounting entries; (b) nondisclosed and unauthorized personal credit payments; (c) nondisclosed and unauthorized additional shareholder disbursements to himself; (d) nondisclosed and unauthorized payments to family members; (e) nondisclosed and unauthorized payments made to personal creditors of himself and his family members; (f) creating nondisclosed and unauthorized additional credit card accounts for his family members for their personal expenses on Spirit Enterprise credit accounts; and (g) nondisclosed and unauthorized *interested* party transactions and "loans" to himself from Spirit Enterprise accounts.

11.

On multiple occasions in 2008 through present Michael Spicer made intentional, material representations and/or omissions to Randy Ritmiller regarding accounting entries referencing lower owner distribution payments to himself, when in fact there were multiple additional non-disclosed distributions made payable to Michael Spicer over and above those

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

made payable to Mr. Ritmiller. Due to Michael Spicer's mother's (Mary Lou Spicer) status as office manager/bookkeeper, Randy Ritmiller relied upon these misrepresentations and material omissions in accepting the tax documents and what bookkeeping was turned over to him reflecting that shareholder distributions were always made according to the shareholder percentages for both of Spirit's shareholders.

12.

Additionally, as part of this scheme and artifice to defraud Spirit Enterprises and Mr. Ritmiller from at least 2008 through present, Michael Spicer has claimed and admitted to unauthorized and unapproved *interested shareholder* loan(s) in contravention of the Bylaws of Spirit Enterprises.

13.

At no point were these additional distribution payments, or claimed loans referenced above authorized by Randy Ritmiller, and he is the only disinterested shareholder that could have approved such additional disbursement and loans. Additionally and again, due to Mary Lou Spicer's status as office manager for Spirit Enterprises, Randy Ritmiller relied upon these misrepresentations and material omissions made to him by Michael Spicer or Mary Lou Spicer when conducting shareholder business for Spirit Enterprises.

14.

These multiple shareholder distributions were not disclosed and were intentionally omitted from bookkeeping disclosures to Mr. Ritmiller to whom he owed a fiduciary duty and a duty of loyalty. These duties to Mr. Ritmiller were breached by Michael Spicer due to these multiple omissions and misrepresentations.

15.

From February of 2008 through 2013 Michael Spicer and Mary Lou Spicer made these representations and/or material omissions of these additional disbursements and

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

unauthorized shareholder personal transactions to Randy Ritmiller via accounting entries referencing at least a portion of such funds as "retained earnings" of the company.

16.

More specifically, as part of this scheme and artifice to defraud Mr. Ritmiller, from 2008 through 2013 Michael Spicer, Amy Spicer and Justin Spicer took several direct, unauthorized payments made payable to themselves in the form of nonbusiness related credit card authorizations and accounts, after referring to them in the physical accounting and bookkeeping records and physical check register as retained earnings, or not reporting them in any respect on the disclosed accounting records.

17.

Seemingly emboldened by the success of their scheme and artifice to defraud Mr. Ritmiller, Andrew Spicer received the benefit of funds expended on his behalf for fraternity housing at Washington State University, Washington State University tuition payments, and other college related expenses paid for from funds and/or credit of Spirit Enterprises.

18.

Again, at no point between were the above referenced Washington State Univeristy and college related payments authorized by Randy Ritmiller. Further and again, due to Mary Lou Spicer's status as office manager and Michael Spicer's role as the shareholder in charge of such accounting and administrative duties, Randy Ritmiller was mislead by these misrepresentations and material omissions in believing that he was receiving his proper forty-nine (49%) shareholder disbursements .

19.

As a direct result of this scheme and artifice to defraud Spirit Enterprises, economic damages were incurred in an amount to be better proven at trial, but not to exceed One-Million and No/Cents Dollars ($1,000,000.00). Additionally, per ORS 82.010 Plaintiffs

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

demand that prejudgment interest begin to run on these fraudulently appropriated amounts from the date of misappropriation in the amount of nine-percent (9%) per annum.

**SECOND CAUSE OF ACTION**
(Breach of Duty of Full Disclosure: Michael Spicer)

20.

Plaintiff herein fully incorporates paragraphs 9 through 19 above.

21.

Mr. Ritmiller was owed a duty of full disclosure by Michael Spicer of any *interested* dealings and funds of Spirit Enterprises being diverted for the personal benefit of Michael Spicer, Amy Spicer, Mary Lou Spicer, Justin Spicer and Andrew Spicer. Mr. Ritmiller was not given full disclosure of these transactions. Accordingly, Mr. Spicer breached his duty to fully disclose such payments for he and his family's personal expenses to Mr. Ritmiller.

22.

As a direct result of this scheme and artifice to defraud Mr. Ritmiller, economic damages were incurred in an amount to be better proven at trial, but not to exceed One-Million and No/Cents Dollars ($1,000,000). Additionally, per ORS 82.010 Plaintiffs demand that prejudgment interest begin to run on these fraudulently appropriated amounts from the date of misappropriation in the amount of nine-percent (9%) per annum.

**THIRD CAUSE OF ACTION**
(Common Law Fraud: Michael Spicer, Mary Lou Spicer)

23.

Plaintiff herein fully incorporates paragraphs 9 through 19, and 21 through 22 above.

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

24.

Michael Spicer and Mary Lou Spicer made misrepresentations and material omissions of equal shareholder disbursements and shareholder income derived from Spirit Enterprises by Michael Spicer and Randy Ritmiller in their respective 51% to 49% shareholder ownership stakes in the disclosed accounting and tax documents.

25.

These material misrepresentations and omissions of material fact of such unequal shareholder disbursements and unequal income derived from Spirit Enterprises by Michael Spicer made by Mary Lou Spicer and Michael Spicer were intentionally made to induce Mr. Ritmiller to rely upon such fraudulent, misleading accounting and tax documents in thinking that he was receiving his proper ownership percentage of the shareholder distributions and income of Spirit Enterprises.

26.

As a direct result of this scheme and artifice to defraud Mr. Ritmiller, economic damages were incurred in an amount to be better proven at trial, but not to exceed One-Million and No/Cents Dollars ($1,000,000.00). Additionally, per ORS 82.010 Plaintiffs demand that prejudgment interest begin to run on these fraudulently appropriated amounts from the date of misappropriation in the amount of nine-percent (9%) per annum.

**<u>FOURTH CAUSE OF ACTION</u>**
(Conversion: Justin Spicer)

27.

Plaintiff herein fully incorporates paragraphs 9 through 19, 21 through 22 and 25 and 26 of the above causes of actions.

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

28.

On or about 2009 Michael Spicer's son, Justin Spicer was hired by Spirit Enterprises by and through Michael Spicer to perform general plumbing work for Spirit Enterprises.

29.

During Justin Spicer's employment with Spirit Enterprises he materially participated in Michael Spicer's scheme and artifice to defraud Spirit Enterprises including, but not limited to making several nonbusiness related purchases for his personal benefit. Therefore, Justin Spicer received the benefit of funds that he knew or should have known was not his to be properly benefiting from, as he was not the rightful owner of such funds.

30.

As a result of Justin Spicer's participation in this scheme and artifice to defraud and his intent to permanently deprive the rightful owner of the funds and credit he was spending on personal expenses, economic damages were incurred by Mr. Ritmiller in an amount to be better proven at trial, but not to exceed Fifty Thousand and No/Cents Dollars ($50,000). Additionally, per ORS 82.010 Plaintiffs demand that prejudgment interest begin to run on these fraudulently appropriated amounts from the date of misappropriation in the amount of nine-percent (9%) per annum.

**FIFTH CAUSE OF ACTION**
(Conversion: Michael Spicer, Mary Lou Spicer, Amy Spicer, Justin Spicer and Andrew Spicer)

31.

Plaintiff herein fully incorporates paragraphs 9 through 19, 21 through 22, 25 and 26, and 29 through 30 of the above causes of actions.

///

///

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

32.

As Spirit Enterprises was the rightful owner of the funds expended through Michael Spicer's scheme and artifice to defraud the business, and since those funds were spent for the benefit of Michael Spicer, Amy Spicer, Mary Lou Spicer, Justin Spicer and Andrew Spicer with the intent to permanently deprive Spirit Enterprises and flowing through to Mr. Ritmiller of those funds, each of these individuals intentionally meant to permanently convert those funds for their personal benefit.

33.

As Spirit Enterprises funds were converted by Michael Spicer, Amy Spicer, Mary Lou Spicer, Justin Spicer and Andrew Spicer they have respectively and/or individually caused Mr. Ritmiller economic damages in an amount to be better proven at trial, but not to exceed One Million and No/cents Dollars ($1,000,000). Additionally, per ORS 82.010 Plaintiffs demand that prejudgment interest begin to run on the worth of these converted amounts from the date of conversion in the amount of nine-percent (9%) per annum.

**SIXTH CAUSE OF ACTION**
(Intentional Infliction of Emotional Distress:
Michael Spicer, Amy Spicer and Mary Lou Spicer)

34.

Plaintiff herein fully incorporates paragraphs 9 through 19, 21 through 22, 25 and 26, 29 through 30, and 34 through 35 of the above causes of actions.

35.

By and through this scheme and artifice to defraud, unjustly enrich and to convert from Mr. Ritmiller, Michael Spicer, Amy Spicer and Mary Lou Spicer intended to inflict severe emotional stress on Mr. Ritmiller. Randy Ritmiller actually incurred severe emotional distress due to Michael Spicer, Amy Spicer and Mary Lou Spicer's intentional acts, and the

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

entirety of these actions constitute an extraordinary transgression outside the bounds of socially tolerable conduct.

36.

Due to this intentional infliction of emotional distress upon Randy Ritmiller, he has incurred economic damages and non-economic damages in an amount to be better proven at trial, but not to exceed Five Hundred Thousand and No/Cents Dollars ($500,000).

**SEVENTH CAUSE OF ACTION**

(Violation of ORS 60.952/Oppressive, Illegal and Fraudulent Acts by Majority Shareholder: Michael Spicer)

37.

Plaintiff herein fully incorporates paragraphs 9 through 19, 21 through 22, 25 and 26, 29 through 30, and 34 through 35 of the above causes of actions.

38.

After Mr. Ritmiller started asking about his financial concerns with Michael Spicer, Michael Spicer initiated the removal of Mr. Ritmiller from Spirit Enterprises via oppressive, and fraudulent means.

39.

Specifically, Michael Spicer terminated Mr. Ritmiller's employment without cause on or about May 2013, caused illegal tax actions to be innocently filed by Mr. Ritmiller on multiple occasions starting on or before the tax year 2011, and has defrauded Mr. Ritmiller via his scheme and artifice to do so via misrepresented, materially omitted accounting records secreting his illegal interested shareholder transactions and extra income derived from Spirit Enterprises over and above his rightfully owed fifty-one percent (51%) ownership stake in Spirit Enterprises since on or before 2008.

///

///

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

40.

Furthermore, Michael Spicer offered Mr. Ritmiller Four Hundred Thousand and No/cents Dollars ($400,000) for his share of the business in 2012 and 2013 regardless of the fact that he and Mr. Ritmiller had decided on or about 2008 that the company was worth approximately Seven Hundred and Fifty Thousand and No/cents dollars ($750,000) per shareholder with a total valuated worth of approximately One Million Five Hundred Thousand and No/cents Dollars ($1,500,000). When Mr. Ritmiller ultimately rejected this offer, Michael Spicer threatened Mr. Ritmiller with a serious cut in his funds from Spirit Enterprises and made other derogatory threats, detailing even that Mr. Ritmiller contributed nothing more than what could be had from a hired licensed plumber and that he was not worth more than that to the company.

41.

Additionally, Michael Spicer and his wife, Amy Spicer repeatedly communicated and texted with Mr. Ritmiller and his wife using profane and other derogatory language in an attempt to demean and belittle Mr. Ritmiller and his wife.

42.

Also and most heinously, Michael Spicer, Amy Spicer and other members of the Spicer family made payment arrangements for a week-long vacation to Hawaii that was paid for using Spirit Enterprise funds and credit. The payments and arrangements for his vacation took place the very week that Mr. Ritmiller and his wife lost their daughter; Whitney Heichel, a barista in Gresham, Oregon who was kidnapped and murdered and for which a multi-day search party and manhunt was issued. The vacation that the Spicer family went on just a couple of weeks later misappropriated additional funds of approximately Thirteen Thousand and No/cents Dollars ($13,000).

///

///

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

43.

Due to the oppressive, illegal and fraudulent acts of Michael Spicer, Mr. Ritmiller has suffered economic damages in an amount to be better proved at trial, but not to exceed One-Million Two Hundred and Fifty Thousand and No/cents Dollars ($1,250,000). Furthermore, Mr. Ritmiller respectfully requests that the court exercise its powers under ORS 60.952 to have Michael Spicer purchase Mr. Ritmiller's shares at a "fair value" of Seven Hundred Fifty Thousand and No/cents Dollars ($750,000) and award an additional amount of Five Hundred Thousand and No/cents dollars ($500,000) in damages for his oppressive, illegal and fraudulent actions taken against Mr. Ritmiller, in addition to any other equitable remedies that the court finds just and equitable for the acts perpetrated against him. Also, per ORS 82.010 Plaintiffs demand that prejudgment interest begin to run on the worth of these misappropriated amounts from the date of conversion in the amount of nine-percent (9%) per annum.

**EIGHTH CAUSE OF ACTION**
(Unjust Enrichment: Michael Spicer, Amy Spicer, Mary Lou Spicer, Justin Spicer and Andrew Spicer)

44.

Plaintiff herein fully incorporates paragraphs 9 through 19, 21 through 22, 25 and 26, 29 through 30, 34 through 35 and 38 through 43 of the above causes of actions.

45.

By and through this scheme and artifice to defraud; convert funds, materials and supplies from Spirit Enterprises; and defame Spirit Enterprises for the benefit of themselves, Michael Spicer, Amy Spicer, Justin Spicer and Mary Lou Spicer have been unjustly enriched by obtaining money and other things of value from Plaintiff without the permission of Plaintiff. Specifically including, but not limited to the following: Spirit Enterprises funds were being depleted by their use of Spirit Enterprise credit cards for their own personal

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

expenses. There may yet be undiscovered accounts and personal expenses where misappropriated Spirit Enterprises funds have been diverted for their personal benefit.

46.

By and through this scheme and artifice to defraud, and convert funds from Spirit Enterprises flowing through to the minority shareholder, Randy Ritmiller ; Michael Spicer, Amy Spicer, Justin Spicer and Mary Lou Spicer have been unjustly enriched by obtaining money and other things of value from Plaintiff without the legal right or the permission of Plaintiff.

47.

Due to this unjust enrichment Plaintiff has been damaged in an amount which shall be better proven at trial, but in no event shall be less than Five Hundred Thousand and No/cents Dollars ($500,000). Additionally, per ORS 82.010 Plaintiffs demand that prejudgment interest begin to run on the worth of these misappropriated amounts from the date of conversion in the amount of nine-percent (9%) per annum.

**NINTH CAUSE OF ACTION**

(Intentional Infliction of Emotional Distress:
Michael Spicer and Amy Spicer)

48.

Plaintiff herein fully incorporates paragraphs 9 through 19, 21 through 22, 25 and 26, 29 through 30, 34 through 35, 38 through 43, and 44 through 47 of the above causes of actions.

///

///

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

49.

By and through this scheme and artifice to defraud, unjustly enrich and convert from, and to defame Spirit Enterprises and its minority shareholder, Randy Ritmiller; Michael Spicer, Amy Spicer and Mary Lou Spicer intended to inflict severe emotional stress on Randy Ritmiller and Lorilei Ritmiller. Randy Ritmiller and Lorilei Ritmiller actually incurred severe emotional distress due to Michael Spicer, Amy Spicer and Mary Lou Spicer's intentional acts by the callous disregard for the emotional and monetary burdens placed upon the Mr. Ritmiller when he and his wife lost their daughter, through the vicious and derogatory texts that included profane language, and the entirety of their actions which constitute an extraordinary transgression outside the bounds of socially tolerable conduct.

50.

Due to this intentional infliction of emotional distress upon Randy Ritmiller, they have individually and conjunctively incurred economic damages and non-economic damages in an amount to be better proven at trial, but not to exceed Five Hundred Thousand and No/Cents Dollars ($500,000).

51.

**PUNITIVE DAMAGES**

Per ORS §31.725 *et seq.* Plaintiffs hereby give notice that they may seek to amend this Complaint in the future and at the appropriate time to include a claim for punitive damages.

Wherefore, Plaintiffs pray for a judgment:

(a) awarding Plaintiff economic damages to be proven at trial, which are not to exceed $1,000,000 for Michael Spicer's breach of the duty of good faith and fair dealing;

(b) awarding Plaintiff economic damages to be proven at trial, which are not to exceed $1,000,000 for Michael Spicer's breach of the duty of full disclosure;

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

(c) awarding Plaintiff economic damages to be proven at trial, which are not to exceed $1,000,000 those damages incurred related to scheme and artifice to defraud Randy Ritmiller as to Michael Spicer and Mary Lou Spicer;

(d) awarding Plaintiffs economic damages to be proven at trial, which are not to exceed $1,000,000 for those damages related to the conversion of funds for the benefit of Michael Spicer, Amy Spicer, Justin Spicer and Mary Lou Spicer;

(e) awarding Plaintiffs damages to be proven at trial, which are not to exceed $500,000 for those damages related to the claim for ORS 60.952 oppressive, illegal and fraudulent acts over and above ordering Mr. Spicer to pay Mr. Ritmiller "fair value" for his shares in the company;

(f) awarding Plaintiffs economic damages to be proven at trial, which are not to exceed $30,000 for those damages related to the conversion of funds for the benefit of Andrew Spicer;

(g) awarding Plaintiffs damages to be proven at trial, which are not to exceed $500,000 for Michael Spicer, Amy Spicer and Mary Lou Spicer's intentional infliction of emotional distress with regard to Randy Ritmiller;

(h) awarding Plaintiffs any and all appropriate and applicable prejudgment interest per ORS 82.010;

(i) awarding Plaintiffs any and all reasonable costs and disbursements allowable herein; and

(d) granting such other relief as may be equitable and just.

Respectfully submitted,

By: ______________________
James R. Dowell,
OSB No. 04058
TX Bar No. 24036498
**ATTORNEY FOR PLAINTIFF**

Law Firm of James R. Dowell, LLC
5319 SW Westgate Dr. Ste. 120
Portland, Oregon 97221
Jamesrdowell@jdowell.net
Office: 971-221-2086
Fax: 971-249-7209

12/05/2014 12:04:39
13060882

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

RANDY RITMILLER, for himself and derivatively on behalf of Spirit Enterprises of Oregon, Inc., a nominal defendant,

Plaintiff,

v.

MICHAEL SPICER, and SPIRIT ENTERPRISES OF OREGON, INC., (D/B/A Stan the Hot Water Man), an Oregon corporation,

Defendants,

Case No. 1306-08821

**FIRST AMENDED COMPLAINT**

JURY TRIAL REQUESTED

ACTION FOR MINORITY SHAREHOLDER OPPRESSION, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, FRAUD, CONVERSION, UNJUST ENRICHMENT, and ACCOUNTING

CLAIM NOT SUBJECT TO MANDATORY ARBITRATION

CLAIM AMOUNT NOT MORE THAN $3,000,000

Plaintiff Randy Ritmiller ("Ritmiller"), directly on his behalf and derivatively on behalf of Spirit Enterprises of Oregon, Inc. (the "Company"), asserts the following claims:

**STATEMENT OF THE CASE**

1

These claims arise out of the discovery by Ritmiller, 49 percent shareholder of the Company, that the Company's majority shareholder, Michael Spicer, and his family have improperly taken out of the Company hundreds of thousands of dollars in personal expenses, extra shareholder distributions, and "loans" over the last several years. The extra distributions paid to Michael Spicer amounted to $124,550 just since 2008. The expenses include, but are not limited to:

1. College tuition for one of Michael Spicer's children;

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

2. Travel to and shopping in Las Vegas;
3. Travel to and entertainment in Hawaii;
4. Fraternity fees;
5. Cosmetic procedures; and
6. NASCAR experience.

2

When Ritmiller raised concerns regarding the operation of the Company, Michael Spicer:

1. Fired Ritmiller;
2. Unilaterally removed Ritmiller as a director;
3. Refused and delayed full disclosure of the Company's books and records;
4. Cut off Ritmiller's salary and benefits;
5. Reduced or eliminated distributions to Ritmiller (at a time when the Company's gross revenues rose from $2.5 million in 2011 to $2.9 million in 2013); and
6. Quadrupled his own salary.

3

Ritmiller seeks to correct these abuses and to prevent further harm to both him and the Company by bringing claims for minority shareholder oppression under ORS 60.952, breach of fiduciary duty, breach of contract, fraud, conversion, unjust enrichment, and accounting. Ritmiller seeks damages (plus applicable pre- and post-judgment interest as allowed by law) and other relief, including, but not limited to:

- An order requiring that Michael Spicer be removed as director and officer of the Company and that an independent custodian and/or director be appointed;

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- An order requiring the Company to cease payment of personal expenses for Michael Spicer and members of his family;
- An accounting of the money taken out of the Company by Michael Spicer and his family members, whether characterized as income, distributions, personal expenses, shareholder loans, or otherwise;
- An order requiring that improper shareholder loans be documented with a payment schedule, appropriate interest, security, and promissory note;
- An order requiring that the Company make an equalization of distributions consistent with the relative ownership of Company shares between Michael Spicer and Ritmiller;
- An order requiring the Company to pay for an appraisal of the undiscounted fair value of the shares in the Company;
- An order requiring the Company to redeem Ritmiller's shares in the Company at their undiscounted fair value;
- Reasonable attorney fees and costs based on the substantial benefits realized by the Company through this action; and
- Appropriate injunctive relief and such other relief as may be just and equitable.

**THE PARTIES**

4

Ritmiller is a resident of Multnomah County in the State of Oregon, was at all times a 49 percent shareholder of the Company, and was a director and employee of the Company until his termination by Michael Spicer in June 2013. Ritmiller has been a shareholder at all times during the actions complained of herein.

///

///

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

5

Defendant Michael Spicer is a resident of Clark County in the State of Washington. Michael Spicer owns the other 51 percent of the shares of the Company and currently serves as president and director of the Company.

6

The Company is now, and at all times has been, a closely held "S" corporation organized under the laws of Oregon. Its principal place of business is located in Wood Village, Oregon in Multnomah County. The Company provides hot water heating services as "Stan the Hot Water Man" in the Portland metropolitan area. To maintain S-corporation status, S-corporations must comply with several requirements, including the requirements that there be only one class of stock and that all shareholders receive equal distributions based on their percentage of share ownership.

**FACTS COMMON TO ALL CLAIMS**

7

In 1997, Ritmiller and Michael Spicer purchased the Company for $400,000 from Michael Spicer's father. Beginning at that time, Michael Spicer handled administrative duties of the Company while Ritmiller was the Company's lead licensed and bonded plumbing contractor.

8

From 1998 through 2013, Ritmiller trusted his partner and understood that both would treat each other fairly, honestly, and in a manner that protected each shareholder's right to participate and benefit equally from their respective ownership of the Company.

**(Personal Expenses)**

9

In 2013, the tight friendship and trust between Ritmiller and Michael Spicer soured when Ritmiller learned that his partner was secretly using substantial amounts of money

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

from Company accounts to fund his family's lavish lifestyle and to deprive Ritmiller the benefits of ownership.

10

After independently obtaining and reviewing Company credit card statements in or around February 2013, Ritmiller discovered that Michael Spicer had been charging thousands of dollars in personal expenses to the Company's credit cards to pay for, among other things, vacations, expensive dinners, college tuition, and thousand-dollar personal purchases at various stores for the benefit of himself and his family. During 2012 alone, Michael Spicer's personal use of the Company credit card amounted to more than $100,000. The amount and timing of each payment or charge is ascertained or easily ascertainable from contemporaneous credit card account statements and other Company records.

11

Examples of the charges Michael Spicer and/or his family members put on the Company credit card include:

a. $6,193.22 in charges to the Bellagio Hotel in Las Vegas, Nevada, in or around January 2012, including $3,286.24 to a luxury eyeglasses retailer in the hotel;

b. In excess of $10,000 in charges for travel, hotels, meals, rental cars, and entertainment in Hawaii in September and November 2012;

c. In excess of $10,000 in charges at hotels, resorts, rental cars, and golf clubs in and around Palm Desert, California, over the course of multiple trips beginning in 2011 at the latest and continuing at least until 2013;

d. In excess of $30,000 in airfare charges from January 2011 through June 2013 alone, often with four or more flights purchased at the same time;

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

    e. $2,253.45 in charges at the Nordstrom clothing store in or around May and June 2012;

f. $1,117 in charges to the True Religion clothing store in or around December 2011;

g. $998 in charges to the Richard Petty Driving School in or around December 2011;

h. $1,808 in total charges to The Waldorf Center for Plastic Surgery in or around February and May 2012; and,

i. In excess of $35,000 in tuition, fraternity fees, and other costs at Washington State University beginning in 2011 and continuing at least through March 2013.

12

Michael Spicer's personal use of Company funds extended beyond the Company's credit card and the Company's checking account. For instance, the Company's check ledgers reflect a payment of more than $24,000 in connection with Michael Spicer's life insurance policy. The amount and timing of each payment is ascertained or easily ascertainable from contemporaneous checking account statements, Company ledgers, and other Company records.

**(Unbalanced Distributions and Shareholder Loans)**

13

On multiple occasions Michael Spicer received payments from the Company characterized as 51 percent distributions that were not accompanied by 49 percent distributions to Ritmiller. Just since 2008, the Company made the following distributions to Michael Spicer without accompanying distributions to Ritmiller:

- $40,400 in payments recorded in the Company's ledgers as "51% Dist[ributions]" in 2008;
- $20,400 in such payments in 2009;

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- $30,600 in such payments in 2010; and
- $33,150 in such payments in 2011.

14

The Company's records reflect that these improper distributions may have been converted into shareholder loans. As of December 31, 2013, the Company records reflected that Michael Spicer’s shareholder loans amounted to $260,096. However characterized, these unilateral and unbalanced payments deprive Ritmiller of the full benefits of his 49 percent ownership share in the Company, violate the Company's Articles and Bylaws ("Bylaws") (Article VII), and potentially jeopardize the Company's status as an S-corporation.

15

The personal expense payments, loans, and unequal distributions to Michael Spicer are improper because:

- Michael Spicer was interested in and personally benefited from each such payment, loan, or distribution;
- Michael Spicer consequently had an obvious conflict of interest in connection with each such payment, which he caused, approved, or otherwise knowingly permitted.
- The payments, loans, and distributions were not approved by Ritmiller, as holder of the majority of votes excluding those of Michael Spicer;
- The Company's Board of Directors did not determine that the payments, loans, and distributions benefitted the Company;
- The Company's Board of Directors did not approve the payments, loans, and distributions;
- The loans and personal expenses serve no legitimate business purpose;
- There is no promissory note or commitment to repay the amounts loaned;
- The loans carry inadequate or no rate of interest;

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- The loans are not secured;
- The payments, loans, and distributions are unequal and deprive Ritmiller of the rights and benefits of a 49 percent shareholder; and
- The payments and loans are not fair to the Company.

16

According to records received, not one dollar of the amounts taken by Michael Spicer since at least 2008 (and presumably earlier) has been repaid.

**(Discovery)**

17

Michael Spicer represented to Ritmiller and assured him that both shareholders would be treated equally relative to their ownership interests in the Company, and that neither Michael Spicer nor his family would take substantial and disproportionate amounts of money out of the Company for personal purposes through credit card use, distributions, or otherwise. Ritmiller relied on and trusted Michael Spicer to honor these promises.

18

Material facts relating to personal expenses paid on behalf of Michael Spicer and his family by the Company, unequal shareholder distributions, and shareholder loans to Michael Spicer were concealed and continue to be withheld from Ritmiller as 49 percent shareholder and, previously, as director.

19

It was not until around February 2013 that Ritmiller independently obtained excerpts of the Company's ledgers and bank account records detailing the extra shareholder distributions to Michael Spicer and the personal expenses incurred on the Company's credit cards by Michael Spicer and his family members. Prior to this discovery in 2013, Ritmiller was unaware of the abuses alleged herein.

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

**(Squeeze Out of Ritmiller)**

20

After Ritmiller raised concerns about the Company's operations to Michael Spicer, Michael Spicer swiftly excluded Ritmiller from the Company's operations. On or about May 2013, Michael Spicer suspended Ritmiller's employment without cause. Michael Spicer locked Ritmiller out of the Company's offices, denied Ritmiller full disclosure of the Company's financials, and even had Ritmiller's van (which contained his personal equipment and wedding ring) taken from him. In June 2013, Michael Spicer terminated Ritmiller without cause.

21

At the time of his termination without cause, Ritmiller's salary with the Company was $30,000 per year, and Ritmiller received health insurance from the Company for himself and his family.

22

Soon after Ritmiller's ouster, the Company noticed a special shareholders meeting for June 20, 2013, for the purpose of "[r]emov[ing] members of the Board of Directors of the Company" and "[e]lect[ing] members of the Board of Directors of the Company." Ritmiller was removed as director of the Company and Michael Spicer, as the remaining director, then selected his wife, Amelia Spicer, to replace Ritmiller as director of the Company.

23

The following month, Michael Spicer quadrupled his own salary with the Company, increasing it by $90,000 to $120,000, not including his personal use of Company funds and other benefits.

24

As of 2014, there are no fewer than seven members of the Spicer family on the Company's payroll.

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

25

In 2013, the Company had sufficient earnings to make additional distributions. Despite a growth in the Company's total income from $2.5 million in 2011 to $2.9 million in 2013, and the Company's cash position more than tripling from $47,189 to $152,868, the Company reduced distributions to Ritmiller in 2013 by approximately 60 percent. This significant reduction further impaired Ritmiller's finances, which were already subject to a tax lien of $111,995.86.

26

At this time, Michael Spicer and Ritmiller were discussing the possible sale of Ritmiller's shares in the Company. Michael Spicer's termination of Ritmiller's salary and significant reduction in shareholder distributions was intended to pressure Ritmiller to sell his shares at a reduced value.

**(Lack of Full Disclosure)**

27

During all relevant times, Michael Spicer has exercised control over the Company's financial and accounting records. Since around April 2013, Ritmiller has made several shareholder demands for access to the Company's records. Ritmiller finally received productions of some, but not all, of the documents requested in July, August, and October 2014. These productions have revealed even more improper personal use of Company funds and unequal distributions.

28

The records received by Ritmiller have been inconsistent, creating serious questions concerning treatment of personal expenses, loans, and distributions. For instance, it remains unclear which personal expenses are treated as shareholder loans or distributions. Likewise, it is not readily apparent how all payments to Michael Spicer recorded in the

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Company's ledgers as "51% Dist[ributions]" have been treated. Examples of these inconsistencies include the following:

- Personal credit card expenses were not recorded as either shareholder distributions or shareholder loans until 2013.
- The personal credit card expenses that were treated as loans in 2013 are unspecified and do not capture the full amount of personal spending that occurred in 2013 or any of the personal spending that occurred in previous years.
- Interest on the shareholder loans was not charged until 2010. Company records reflect that Michael Spicer was charged an interest rate of 2.38 percent, while Mr. Ritmiller was charged 3.27 percent. Other records reflect different interest rates.
- Despite payments from the Company to Michael Spicer being characterized in the Company ledgers as "51% Dist[ributions]" and payments from the Company to Randy Ritmiller being characterized in the Company ledgers as "49% Dist[ributions]," payments to Michael Spicer amounted to far in excess of 51 percent of such payments and payments to Ritmiller amounted to far short of 49 percent of such payments.

29

In addition, Ritmiller has not received Company records that would reflect personal expenses, distributions, loans, or other payments that occurred before 2008, and he has not received sufficient documentation to confirm the full extent and nature of personal spending that occurred from 1998 to present. The true extent to which Company funds have been misappropriated therefore remains unknown.

///

///

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

**(Demand Futility)**

30

A formal demand on the Company to account for and rectify these improper acts would be futile because (1) the current directors were beneficiaries of the personal expenditures, unequal distributions, and improper loans, and therefore could not be disinterested or independent for purposes of responding to a demand; (2) there are no disinterested or independent directors; and (3) none of the abuses giving rise to this action served a legitimate business purpose. The directors and counsel for the Company have been on notice of these wrongs since the filing of the initial Complaint in this action in June 2013, in addition to numerous communications to the board since. No corrective action has been taken.

## FIRST CLAIM FOR RELIEF
## (Breach of Fiduciary Duty—Derivative Claim)

31

Ritmiller realleges and incorporates by reference paragraphs 1 through 30 above.

32

At all relevant times Michael Spicer, as director and officer of the Company, has owed (and continues to owe) the Company the fiduciary duty of care, loyalty, and to act in good faith and in a manner he reasonably believes to be in the best interests of the Company and its shareholders.

33

As alleged above, Michael Spicer has breached his fiduciary duties and wasted corporate assets through a widespread and continuous misuse of Company assets. The abuses alleged above did not serve legitimate business purposes, were not fair to the Company, and were plagued by Michael Spicer's obvious conflicts of interest. These abuses included:

- Making or approving the expenditure of Company funds for personal purposes;

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- Making or approving payments from the Company to himself characterized as "51% Dist[ributions]" that were not accompanied by 49 percent distributions to Ritmiller;
- Unilaterally taking unapproved, unfair, and undocumented loans from the Company without any security, adequate interest, or commitment to repayment; and
- Quadrupling his salary from $30,000 to $120,000 in 2013.

34

The Company has sustained monetary damages in an amount to be proven at trial as a result of these abuses.

35

The Company further has no adequate remedy at law to fully correct and protect it against the abuses alleged above. The court should order such equitable relief as is necessary to protect the Company, including, but not limited to:

- An order requiring the Company to cease payment of personal expenses for defendant Michael Spicer and his family members;
- An accounting of the personal expenses, extra distributions, and undocumented and unapproved loans to Michael Spicer;
- To the extent amounts taken from the Company are not repaid through a damages award in favor of the Company, an order requiring Michael Spicer to execute a promissory note that provides a secured commitment to repay such amounts to the Company according to an appropriate repayment schedule that includes interest that has accrued since the date the funds were taken from the Company until repaid; and
- An order requiring that Michael Spicer be removed as director and officer of the Company and that an independent custodian be appointed.

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

36

Ritmiller further seeks an award of reasonable attorney fees and costs based on the substantial benefits to be realized by the Company through this action.

37

Pursuant to ORS 31.725 *et seq.*, Ritmiller hereby gives notice that he may seek to amend this Complaint in the future and at the appropriate time to include a claim for punitive damages.

**SECOND CLAIM FOR RELIEF**
**(Minority Shareholder Oppression—Direct Claim)**

38

Ritmiller realleges and incorporates by reference paragraphs 1 through 37 above.

39

As majority shareholder in the Company, a closely held S-corporation, Michael Spicer owes Ritmiller the fiduciary duties of loyalty, good faith, fair dealing, and full disclosure.

40

Beginning in 2008 at the latest, Michael Spicer made personal charges and payments on Company credit card and checking accounts as detailed above, including, but not limited to expenses for: vacations, entertainment, personal vehicles, cosmetic procedures, college tuition, fraternity fees, and personal clothing.

41

Beginning in 2008 at the latest, the Company has on multiple occasions made distributions to Michael Spicer as 51 percent shareholder that were not accompanied by distributions to Ritmiller as 49 percent shareholder—distributions that deprive Ritmiller full benefits of his 49 percent ownership share of the Company and that potentially jeopardize the

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Company's S-corporation status and that violate the Bylaws (Article VII) and Oregon statute (ORS 60.154).

42

Since 2007 at the latest, the Company has loaned Michael Spicer at least $260,096 for which no security was required, no promissory note was issued, and no applicable rate of interest was contemporaneously set. Ritmiller, as holder of the majority of votes excluding those of Michael Spicer, did not give approval to the loans, nor did the Company's Board of Directors determine that the loans benefitted the Company and approve such loans, as required by Oregon statute (ORS 60.364). To date, there is no record of Michael Spicer repaying such loans.

43

The payment of personal expenses, the issuance of shareholder loans that were not properly approved or documented, and the payment of distributions to one shareholder but not the other variously violated the Company's Articles and Bylaws (*e.g.*, Bylaws Article VI, § 2; Article VII; Article X), as well as the relevant statutory provisions (*e.g.*, ORS 60.357, 60.361, 60.364, 60.367, 60.374, 60.377).

44

As majority shareholder in control of the Company, Michael Spicer intentionally misled, took unfair advantage of, and oppressed Ritmiller by:

- Making or approving the expenditure of Company funds for personal purposes;
- Making or approving payments from the Company to himself characterized as "51% Dist[ributions]" that were not accompanied by 49 percent distributions to Ritmiller;
- Unilaterally taking unapproved, unfair, and undocumented loans from the Company;

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- Terminating the employment and directorship of Ritmiller without cause;
- Locking Ritmiller out of the business;
- Denying Ritmiller full disclosure of the Company's financials;
- Significantly decreasing the Company's shareholder distributions;
- Quadrupling his own salary; and
- Taking many of these actions while negotiating for the purchase of Ritmiller's shares in the Company.

45

These actions, which violated Michael Spicer's fiduciary duties to Ritmiller, were oppressive under ORS 60.661, ORS 60.952, and the Oregon common law.

46

Ritmiller has no adequate remedy at law to redress the full extent of the harm he has sustained and continues to sustain as a result of Michael Spicer's oppressive conduct. Accordingly, pursuant to ORS 60.952 seeks the following relief:

- An order requiring the Company to cease payment of personal expenses for Michael Spicer and members of his family;
- The removal of Michael Spicer as director and officer of the Company;
- The appointment of an independent custodian to manage the business and affairs of the Company (ORS 60.952(2)(f)) and/or the appointment of an independent provisional director (ORS 60.952(2)(g));
- An accounting of the money taken out of the Company by Michael Spicer and his family members, whether characterized as income, distributions, personal expenses, shareholder loans, or otherwise (ORS 60.952(2)(3));
- An equalization of distributions with appropriate interest that has accrued since each improper distribution (ORS 60.952(2)(i));

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- An order requiring that improper shareholder loans be documented with a payment schedule, appropriate interest, security, and promissory note;
- An order requiring an appraisal of the undiscounted fair value of the shares in the Company;
- An order requiring the purchase or redemption of Ritmiller's shares in the Company at their undiscounted fair value (ORS 60.952(2)(k));
- Damages in an amount to be proven at trial, including prejudgment interest;
- Reasonable attorney fees and costs based on the substantial benefits realized by the Company through this action; and
- Appropriate injunctive relief and such other relief as may be just and equitable.

47

Pursuant to ORS 31.725 *et seq.*, Ritmiller hereby gives notice that he may seek to amend this Complaint in the future and at the appropriate time to include a claim for punitive damages.

**THIRD CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty—Direct Claim)**

48

Ritmiller realleges and incorporates by reference paragraphs 1 through 47 above.

49

At all relevant times Michael Spicer has owed (and continues to owe) fiduciary duties of loyalty, good faith, fair dealing, and full disclosure to Ritmiller as minority shareholder of the Company.

///

///

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

50

As alleged above, Michael Spicer has breached these fiduciary duties owed to Ritmiller by:

- Making or approving the expenditure of Company funds for personal purposes;
- Making or approving payments from the Company to himself characterized as "51% Dist[ributions]" that were not accompanied by 49 percent distributions to Ritmiller;
- Unilaterally taking unapproved, unfair, and undocumented loans from the Company;
- Terminating the employment and directorship of Ritmiller without cause;
- Locking Ritmiller out of the business;
- Denying Ritmiller full disclosure of the Company's financials;
- Significantly decreasing the Company's shareholder distributions;
- Quadrupling his own salary; and
- Taking many of these actions while negotiating for the purchase of Ritmiller's shares in the Company.

51

As a result of Michael Spicer's breaches of his fiduciary duties owed to Ritmiller, Ritmiller was damaged in an amount to be proved at trial for which he is entitled to an award of damages, including damages in the amount of a 49 percent distribution calculated based on treatment of Michael Spicer's extra distributions, undocumented and unapproved loans, and personal expenses as 51 percent distributions to Michael Spicer.

52

Ritmiller has no adequate remedy at law to protect against Michael Spicer's abuse of his control over the Company, Michael Spicer's misappropriation of Company assets, or the

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

harm caused by depriving Ritmiller of his right to participate in and benefit from his ownership in the Company. The court should order such relief as is necessary to redress these wrongs, including:

- The removal of Michael Spicer as director and officer of the Company;
- The appointment of an independent custodian to manage the business and affairs of the Company and/or the appointment of an independent provisional director;
- An accounting of the personal expenses, extra distributions, and undocumented and unapproved loans to Michael Spicer; and,
- An equalization of distributions.

53

Pursuant ORS 31.725 *et seq.*, Ritmiller hereby gives notice that he may seek to amend this Complaint in the future and at the appropriate time to include a claim for punitive damages.

## FOURTH CLAIM FOR RELIEF
## (Breach of Contract—Direct Claim)

54

Ritmiller realleges and incorporates by reference paragraphs 1 through 53 above.

55

Michael Spicer and Ritmiller agreed that each shareholder would receive equal benefits from the Company consistent with their respective ownership and that any personal spending of Company funds would be limited in amount and equal. The agreement is a valid contract that is binding on Michael Spicer and contains an implied covenant of good faith and fair dealing.

///

///

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

56

As alleged above, Michael Spicer breached his implied covenant of good faith and fair dealing by:

- Causing the Company to pay substantial and significantly disproportionate personal expenses that benefit only Michael Spicer and/or his family;
- Causing the Company to pay himself distributions that were not accompanied by 49 percent distributions to Ritmiller;
- Unilaterally taking unapproved, unfair, and undocumented loans from the Company without any protections or assurance of repayment;
- Terminating Ritmiller's employment and health insurance;
- Significantly decreasing the amount of shareholder distributions;
- Quadrupling his own salary; and
- Taking many of these actions while negotiating for the purchase of Ritmiller's shares in the Company.

57

As a result of Michael Spicer's breach of contract, Ritmiller was damaged in an amount to be proved at trial for which he is entitled to an award of damages, including damages in the amount of a 49 percent distribution calculated based on treatment of Michael Spicer's extra distributions, undocumented and unapproved loans, and personal expenses as 51 percent distributions to Michael Spicer.

**FIFTH CLAIM FOR RELIEF**
**(Fraud—Direct Claim)**

58

Ritmiller realleges and incorporates by reference paragraphs 1 through 57 above.

///

///

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

59

As alleged above, Michael Spicer made the following representations to Ritmiller when they formed the Company and at various times during their relationship as partners and shareholders from 1998 through 2012, including conversations that occurred at the Company's offices, while working on service calls or installations, and during rounds of golf:

- That each shareholder was receiving and would receive equal benefits from the Company consistent with their respective ownership;
- That any personal spending of Company funds would be limited in amount and equal.
- That neither Michael Spicer nor his family were using or would use Company funds for their personal benefit in amounts that were significantly disproportionate to amounts spent by Ritmiller;
- That each time Michael Spicer took a distribution Ritmiller was receiving and would receive a corresponding distribution; and
- That Michael Spicer and his family were managing and would manage the Company's finances and bookkeeping in a manner that ensured such equal treatment.

60

Michael Spicer intended for Ritmiller to rely on these representations and either knew they were false when made or made them with reckless disregard of the truth. Ritmiller justifiably relied on Michael Spicer's representations and entrusted Michael Spicer and other members of Michael Spicer's family with the bookkeeping and financial affairs of the Company.

61

Michael Spicer intentionally concealed and failed to disclose to Ritmiller material facts, including the following:

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- Michael Spicer and his family were using substantial and significantly disproportionate amounts of Company funds for personal purposes as detailed above;
- Michael Spicer was taking distributions without corresponding distributions to Ritmiller;
- Michael Spicer was taking loans without any commitment for repayment, security, or adequate interest; and
- Ritmiller was not receiving equal benefits consistent with his ownership in the Company.

62

The full extent and nature of the concealed abuses remains unknown due to the Company's inconsistent and incomplete accounting, in addition to the lack of complete documentation and information from the Company.

63

As a result of Michael Spicer's promises, representations, and fiduciary duties, he had a duty to disclose the material facts alleged above to Ritmiller.

64

Michael Spicer intended that Ritmiller would rely to his detriment on these representations and omissions. Ritmiller did, in fact, rely on Michael Spicer's representations and omissions.

65

As a result of Michael Spicer's fraudulent representations and omissions, Ritmiller was damaged in an amount to be proved at trial for which he is entitled to an award of damages, including damages in the amount of a 49 percent distribution calculated based on treatment of Michael Spicer's extra distributions, undocumented and unapproved loans, and personal expenses as 51 percent distributions to Michael Spicer.

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

66

Pursuant to ORS 31.725 *et seq.*, Ritmiller hereby gives notice that he may seek to amend this Complaint in the future and at the appropriate time to include a claim for punitive damages.

**SIXTH CLAIM FOR RELIEF**
**(Conversion—Derivative Claim)**

67

Ritmiller realleges and incorporates by reference paragraphs 1 through 66 above.

68

As alleged above, Michael Spicer has misappropriated Company funds through the use of Company credit cards, access to Company bank accounts, unilateral "loans" with no promise of repayment, and improper distributions.

69

The Company was and is the rightful owner of these funds.

70

The Company has sustained damage in an amount to be proven at trial as a result of Michael Spicer's conversion of Company funds, including the total amount of funds improperly taken and interest that has accrued since each such conversion.

71

Ritmiller further seeks an award of reasonable attorney fees and costs based on the substantial benefits to be realized by the Company through this action.

**SEVENTH CLAIM FOR RELIEF**
**(Unjust Enrichment—Derivative Claim)**

72

Ritmiller realleges and incorporates by reference paragraphs 1 through 71 above.

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

73

Michael Spicer abused his control over the Company by causing it to improperly divert substantial Company funds to pay personal expenses, a $120,000 salary, improper distributions, and "loans" that lacked security, interest, and any commitment of repayment. The substantial amount of Company funds that were diverted to Michael Spicer constitute a benefit that has been conferred by the Company.

74

It would be unjust to allow defendant Michael Spicer to retain such benefits without requiring repayment with interest.

75

As a result of Michael Spicer's unjust enrichment, the Company has been damaged in an amount that will be proven at trial. The Company has no adequate remedy at law to prevent defendant Michael Spicer from improperly causing the Company to continue to make personal charges and payments of the kind detailed above, and by failing to recover amounts loaned to shareholders. The court should order such equitable relief as is necessary to prohibit such personal charges and payments to protect the Company.

76

Ritmiller further seeks an award of reasonable attorney fees and costs based on the substantial benefits to be realized by the Company through this action.

**EIGHTH CLAIM FOR RELIEF**
**(Accounting)**

77

Ritmiller realleges and incorporates by reference paragraphs 1 through 76 above.

78

During all relevant times, Michael Spicer has exercised control over the Company's financial and accounting records.

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

79

As alleged above, the records received have been incomplete and inconsistent, creating serious questions concerning the full amount Company funds that have been misappropriated and how the Company treated personal expenses, loans, and distributions. For instance, it remains unclear what personal expenses have been treated as shareholder loans or distributions and whether and how unequal distributions were properly converted into loans.

80

On behalf of the Company and himself, Ritmiller seeks an order requiring an accounting, including the preparation of audited financial statements and a complete accounting of all Company funds that have been diverted to Michael Spicer or others for personal benefit though credit card payments, distributions, loans, or otherwise. Such an accounting is necessary to ensure that the Company's interests and assets are protected and that it maintains its S-Corporation status.

**PRAYER FOR RELIEF**

WHEREFORE, Ritmiller prays for the following relief:

1. An award of damages in favor of the Company in an amount to be proven at trial, plus applicable pre-and post-judgment interest as allowed by law on amounts ascertained or easily ascertainable from Company records;

2. The removal of Michael Spicer as director and officer of the Company;

3. The appointment of an independent custodian to manage the business and affairs of the Company and/or the appointment of an independent provisional director;

4. An order prohibiting the use of Company funds for personal purposes;

5. An accounting;

6. An order requiring that all outstanding shareholder loans be documented with a payment schedule, appropriate interest, security, and promissory note;

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

7. An award of damages in favor of Ritmiller in an amount to be proven at trial, plus applicable pre-and post-judgment interest as allowed by law on amounts ascertained or easily ascertainable from Company records;

8. An order requiring the equalization of distributions with accrued interest;

9. To the extent not inconsistent with other relief awarded to the Company or Ritmiller, an order requiring Michael Spicer to pay Ritmiller 49% of the amount of Company funds that he misappropriated, plus interest;

10. Pursuant to ORS 60.952(2), an order requiring an appraisal of the undiscounted fair value of Ritmiller's shares and the purchase or redemption of Ritmiller's shares at their undiscounted fair value;

11. An award of reasonable attorney fees and costs based on the substantial benefits realized by the Company through this action; and

12. Appropriate injunctive relief and such other relief as may be just and equitable.

DATED this 5th day of December, 2014.

MILLER NASH LLP

*s/ Justin C. Sawyer*

Peter C. Richter – Trial Attorney
OSB No. 711465
peter.richter@millernash.com
Justin C. Sawyer, P.C.
OSB No. 014057
justin.sawyer@millernash.com
Jonathan H. Singer
OSB No. 105048
jonathan.singer@millernash.com
Phone: (503) 224-5858
Fax: (503) 224-0155

Attorneys for Plaintiff Randy Ritmiller, Individually and as a Shareholder of Spirit Enterprises, Inc.

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing First Amended Complaint on the attorney or party listed below on the date set forth below by the method(s) indicated:

Ryan M. Bledsoe
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204

*Attorneys for Individual Defendants*

☒ First-class mail, postage prepaid
☐ Facsimile, pursuant to ORCP 9 F
☐ Hand-delivery
☐ Overnight courier, delivery prepaid
☐ E-mail, pursuant to ORCP 9 G
☒ E-mail copy, as a courtesy only
☐ Other: __________

Joshua P. Stump
Harrang Long Gary Rudnick PC
1001 S.W. Fifth Avenue, 16th Floor
Portland, Oregon 97204

*Attorneys for Defendant Spirit Enterprises of Oregon, Inc.*

☒ First-class mail, postage prepaid
☐ Facsimile, pursuant to ORCP 9 F
☐ Hand-delivery
☐ Overnight courier, delivery prepaid
☐ E-mail, pursuant to ORCP 9 G
☒ E-mail copy, as a courtesy only
☐ Other: __________

**Electronic Service, via OJD eFiling (using Odyssey File & Serve), pursuant to UTCR 21.100:**

Ryan M. Bledsoe
*Attorney(s) for Individual Defendants*

Joshua Stump
*Attorney(s) for Defendant Spirit Enterprises of Oregon, Inc.*

DATED this 5th day of December, 2014.

*s/ Justin C. Sawyer*
Justin C. Sawyer, OSB No. 014057
justin.sawyer@millernash.com

Attorneys for Plaintiff Randy Ritmiller, Individually and as a Shareholder of Spirit Enterprises, Inc.

Page 1 - Certificate of Service

PDXDOCS:2052394.1
241240-0001

MILLER NASH LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

EXHIBIT 1
Page 42 of 42